UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
BROWARD DIVISION
www.flsb.uscourts.gov

In re:

**Case No. 13-20341-BKC-JKO**
**Chapter 11**

BRETT HOWELL

**Adversary No.:**_____

Debtor and Plaintiff,

v.

BANK OF NEW YORK MELLON F/K/A
BANK OF NEW YORK, AS TRUSTEE FOR
THE CERTIFICATEHOLDERS OF CWALT,
INC. ALTERNATIVE LOAN TRUST 2006-OC8
_____/

## COMPLAINT AND OBJECTION TO POC #9-1 TO DETERMINE VALIDITY, EXTENT AND PRIORITY OF LIEN BY BRETT E. HOWELL

Brett Eugene Howell ("Plaintiff" or "Debtor") files this Adversary Complaint and alleges:

### INTRODUCTION

1.  This is an action brought by the Plaintiff/Debtor seeks to determine the validity, or, the secured or unsecured status, and extent of the Defendant's Claim in this case, and, is also an objection to Proof of Claim No. 9-1 in that it challenges the Defendant's right to a secured or unsecured claim, and, seeks damages and equitable and other relief as provided for by Rules 3007, 7001(2), 7001 (7) and 7001(9) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

2.  This action also seeks actual and punitive damages, pursuant to Section 362(k)(1) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 of the Bankruptcy Code, against the Defendant, BONY, for violating the automatic stay in this case by causing its agent to the file a void proof of claim on its behalf, and for instructing its servicer to attempt to collect payments on the debt without owning and holding the Note,

after it received Notice of the Plaintiff's Ch. 11 Bankruptcy Petition, on May 10, 2013.

## JURISDICTION AND VENUE

3.   This matter is a core proceeding as the term is defined by Title 28 of the United States Code, Section 157(b)(2) in that it concerns claims and counter-claims to Proof of Claim 9-1 in this matter arising out of the administration of this bankruptcy case. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code and Sections 151 and 157(b)(2) of Title 28 of the United States Code.

4.   Venue is appropriate in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

## PARTIES

5.   Plaintiff, Brett E. Howell, is a debtor under Chapter 11 of the Bankruptcy Code in Case Number 13-20341-BKC-JKO, whom filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 1, 2013, which is pending in this Court.

6.   Defendant, Bank of New York Mellon f/k/a Bank of New York, as Trustee for the Certificateholders of CWALT, Inc. Alternative Loan Trust 2006-OC8, Mortgage Pass-Through Certificate, Series 2006-OC8, under the Pooling and Servicing Agreement dated September 1, 2006 ("BONY") is a banking corporation organized under the laws of the state of New York, and which is registered with the state of Florida as a foreign corporation, conducting interstate business in Florida from several locations within the State, including a location at: 910 E. Las Olas Blvd, Fort Lauderdale, FL 33301.

7.   BONY caused Proof of Claim (Claim 9-1), to be filed on its behalf, as the stated Creditor of a debt secured by a mortgage on residential property owned by The Plaintiff.

8.    The Plaintiff's rights, duties and obligations, (as the obligor) as alleged by BONY pursuant to the promissory note (identified more thoroughly below) attached to its Proof of Claim, are, directly, substantively and substantially affected in this case. [1]

9.    The unendorsed promissory note is not an asset of BONY as Trustee for The Trust. The Plaintiff has already made payments on the debt, including payments to BONY's servicers for the benefit of BONY's investors, when BONY does not hold a valid and enforceable, secured or unsecured, interest in the promissory note. The Plaintiff should not be required to continue to pay BONY (or its agent) when it (or its agent) has no right to enforce the debt, under the Proposed Bankruptcy Plan, and Claim 9-1 is invalid, void and otherwise unenforceable and should be disallowed. [2]

---

[1]    See, Federal Rule of Civil Procedure 17; Federal Bankruptcy Rule 3001-1 and Local Rule 3001-1; *see also, Maverick Media Group., Inc. v. Hillsborough County, Fla..,* 528 F.3d 817, 819 (11th Cir. 2008) (internal quotations omitted) (stating that "standing is the threshold question in every federal case."); and, *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010) (stating that the party invoking federal jurisdiction bears the burden of demonstrating his standing to sue and that to demonstrate standing, a party must show: (1) he has suffered, or imminently will suffer, an injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the injury) (*citing, Harrell v. The Florida Bar*, 608 F.3d 1241, 1253 (11th Cir. 2010)).

[2]    *See, Mulhall,* 618 F.3d at 1286 (11th Cir. 2010); and,

*United States v. Butner*, 440 U.S. 48, 54-55 (1979) where the United States Supreme Court pointed out over 40 years ago in, that even in bankruptcy proceedings, State substantive law controls the rights of note obligors, and note and lien holders.

The State substantive law related to the Plaintiff's Note and Mortgage is found in Florida's Uniform Commercial Code, Fla. Stat. §§ 673.3011, § 673.3091, § 673.4181 (4) and § 673.2011, and, 37 Fla. Jur. Mortgages and Deeds of Trust §240 (One who does not have the ownership, possession, or the right to possession of the mortgage and the obligation secured by it, may not foreclose the mortgage); Thus, whether the promissory note was endorsed is central to the merits of the Plaintiff's case at bar. Fla. Stat. § 673.2011; *see e.g., In re: Shelter Development Group, Inc.,* 50 B.R. 588 (Bankr. S. D. Fla. 1985) (It is axiomatic that a suit cannot be prosecuted to foreclose a mortgage which secures the payment of a promissory note, unless the Plaintiff actually holds the original note) (*citing, Downing v. First National Bank of Lake City,* 81 So. 2d 486, (Fla., 1955); *Boyd v. Wells Fargo*, Case No. 4D13-208 (Fla. 4th DCA 2014) (no without documentation to establish Plaintiff's standing at time of filing of complaint); *Ryan v. Wells Fargo*, Case No. 4D13-2155 (Fla. 4th DCA 2014) (the original note presented at trial did not have an endorsement although a copy of the Note with an endorsement had been filed in the Court file 2 yrs after filing and witness did not know if Bank owned loan upon filing, so Plaintiff lacked standing and case dismissed); *Olivera v. BOA,* Case No. 2D13-629 (Fla. 2d DCA 2014) (Proper party with standing is holder of the note and mortgage or holder's representation which must be established at time of filing. Holder is person in possession payable to bearer or person id'd); *Lafrance v. US Bank*, Case No. 4D13-102; 2014 Fla. App. Lexis 10526 (Fla. 4th DCA 2014) (An undated endorsement fails to

10.   The Mortgage is dated August 17, 2006, from Brett E. Howell to Bankers Mortgage Trust, Inc., solely to secure the above-mentioned Note, and remained in the names of BMT and its nominee, MERS. On January 5, 2012, MERS' executed an Assignment of Mortgage to BONY, directly, which was recorded on January 24, 2012. However, the Assignment of Mortgage is invalid and unenforceable against the Plaintiff for several reasons, most importantly, it does not mention an assignment of the Note. Most importantly, since BONY does not hold a valid and enforceable interest in the Note, it cannot have a valid and enforceable right in the Mortgage, the Note's security, and Claim 9-1 is void *ab initio*

---

support Plaintiff's standing on date of filing if not sworn in complaint, affidavit or with testimony. None of the affidavits filed assert that Plaintiff was owner or holder at the time the complaint was filed and SJ reversed and unendorsed copy was attached to complaint); *Wells Fargo Bank v. Bohatka,* 112 So. 3d 596 (Fla. 1st DCA 2013) (holding that Wells Fargo lacked standing because the copy of the note and the mortgage attached to Wells Fargo's claim, identified Option One as the lender and contained no endorsement); *Zimmerman v. JPMorgan Chase Bank,* No. 4D12-2190 (Fla. 4th DCA 2012) (Chase lacked standing because it attached a copy of the note listing Washington Mutual Bank FA as the lender and contained no endorsement); *GMAC Morg. v. Choengkroy,* No. 4D11-3531, 98 So.3d 781 (Fla. 4th DCA 2012) (Plaintiff must demonstrate it had standing to foreclose upon filing and must present evidence it owns and holds the note/mtg by presenting evidence which shows either an assignment or equitable transfer prior to filing); *Mazine v. M&I Bank,* 36 Fla. L. Weekly D1579 (Fla. 1st DCA 2011) (reversing judgment after trial where lender failed to prove that "M&I Bank" had standing to foreclose a mortgage given to "M&I Marshal & Ilsley Bank"); *BAC Funding Consortium Inc. ISAOA/ATIMA v. Jean-Jacques,* 28 So. 3d 936 (Fla. 2d D.C.A. 2010) (reversing summary judgment where plaintiff filed no supporting affidavits and original note did not identify the plaintiff as its holder); *Servedio v. US. Bank,* 46 So. 3d 1105 (Fla. 4th DCA 2010) (a plaintiff must tender the original promissory note to the trial court, and if the note does not name the plaintiff as the payee, the note must bear a special endorsement in favor of the plaintiff, or, a blank endorsement. Alternatively, the plaintiff may submit evidence of an assignment from the payee to the plaintiff or an affidavit of ownership to prove its status as the holder of the note, or, it may seek to reestablish the lost note under section 673.3091, Florida Statutes); *In Re Canellas,* Case No. 6:09-bk-12240-AB, (Bankr. M.D. Fla. 2009) (loan servicer makes no mention of the location of the original Note or who has possession of it, nor did it proffer any evidence tracing ownership of the note and establishing the servicer was the present holder of the note and stay relief was denied.)

*Bank of New York as Trustee for Popular Financial Services Mortgage Pass-Through Certificate Series #2006 v. Joseph A. Romero, et al.,* 2014 N.M. Lexis 81, (N.M. S. CT. 2014) (copy of the note attached to the complaint when the action was first filed contained no endorsements and, therefore, BONY failed to establish it was the holder of the note and BONY lacked standing to enforce it); *Deutsche Bank National Trust Company v. Beneficial NM, Inc.,* 503 (N.M. Ct. App. 2014) (holding that DBNT failed to establish that it had standing; the bank attached unendorsed copy of the note made payable to New Century Mortgage Corporation); *Deutsche Bank National Trust Co. v. Matthews,* 273 P. 3d 43, (OK 2012) (finding that the copy of the note was unendorsed, thus, DBNT lacked standing); and, *In Re Tarantola,* 2010 WL 3022038, (D. AZ, July 9, 2010) (unreported decision, Deutsche Bank as Trustee, did not have standing because the copy of the note attached to the claim contained no endorsements and showed no allonges attached.)

and should be disallowed. The Plaintiff should not be required to continue to secure BONY

(or its agent) when it (or its agent) has no valid and enforceable right and interest in Note.

Claim 9-1 is invalid, void *ab initio* and otherwise unenforceable and should be disallowed.[3]

11.    If however, the Assignment of Mortgage attached to Claim 9-1 is deemed valid, effective,

and enforceable, this would indicate that The Note and Mortgage were split and Claim 9-

1 should be reduced to unsecured status for an amount commensurate with the other

unsecured creditors in the Proposed Bankruptcy Plan.[4]

## NON-PARTIES

12.    Claim 9-1 states that The CWALT, Inc. Alternative Loan Trust 2006-OC8, Mortgage Pass-

Through Certificate, Series 2006-OC8, ("The Trust") is a common law New York Trust

---

[3] *See, e.g., In Re Saldivar*, Case No: 11-10689, Adversary No. 12-01010 (S.D.T.B., Brownsville Division June 5, 2013); *Wells Fargo Bank, N.A. v. Erobobo,* 2013 NY Slip Op. 50675(U) (Sup. Ct. Kings, Apr. 29, 2013), *see also, Glaski v. Bank of America, National Association*, F064556, Ca. App. 5th D. 2013), 39 Misc.3d 1220(A); *In re Veal*, 450 B.R. at 910-13 (B.A.P. 9th Cir. 2011); *In re Doble,* 2011 Bankr. LEXIS 1449 (Bankr. S.D. Cal. Apr. 14, 2011) (citing, *In re Wilhelm*, 407 B.R. 392, 400 (Bankr. D. Idaho 2009)); *In re Kemp,* 440 B.R. 624 (Bankr. D. N.J. 2010); *see also, Nosek v. Ameriquest Mortgage Company (In re Nosek*), 286 Br. 374 (Bankr. D. Mass. 2008); *In re Hayes*, 393 B.R. 259 (Bankr. D. Mass. 2008); *In re Vargas*, 396 B.R. 511 (Bankr. C.D. Cal. 2008); *In re Hwang*, 396 B.R. 757 (Bankr. C.D. Cal. 2008*); Deutsche Bank Nat'l Trust Co. v. Steele*, 2008 WL 111227 (S.D. Ohio) January 8, 2008, *In re Schwartz*, 366 B.R.265 (Bankr. D. Mass. 2007); *In re Foreclosure Cases*, 521 F. Supp. 2d (S.D. Ohio 2007); *and, see, O'Neill v. De Laney*, 92 Ill.App.3d 292, 297 (1980) (holding that a third party can challenge validity of a contract where they established a "significant and direct interest" in its validity); *and, Culhane v. Aurora Loan Services,* No. 12-1285 (1st Cir. February 15, 2013) (borrowers do have legal standing to challenge assignments as "invalid, ineffective, or void and not just voidable at the election of one party, If the Assignment is ineffective to pass legal title, the Assignment is void).

[4]    The rule in Florida, is that an assignment of a mortgage without an assignment of the related mortgage note is deemed a nullity and creates no right in the assignee because a mortgage is a mere lien incidental to the obligation it secures. Fla. Stat. § 673, et seq., Fla. Stat. § 673.3011; 37 Fla. Jur. 2nd, *Mortgages*, Section 511; *Lindsey v. Wells Fargo Bank,* 1D12-2406 (1st DCA 2013); *Stone v. Bank United*, 115 So.3d 411, 413 (Fla. 2d DCA 2013); *Sobel v. Mutual Development, Inc.,* 313 So.2d 77 (Fla. 1st DCA 1975); and, *Vance v. Fields*, 172 So.2d 613 (Fla. 1st DCA 1965) (the Assignment of Mortgage did not purport to transfer the unendorsed Note, and if an assignment of the mortgage is made without the note, the note does not follow the mortgage); *see also, In re Veal*, 450 B.R. 897 (B.A.P. 9th Cir. 2011) (referring to the common law rule that the transfer of a mortgage without a transfer of the obligation it secures, renders the mortgage ineffective and unenforceable in the hands of the assignee); *see also, Culhane v. Aurora Services of Nebraska*, 2011 WL 5925525 WL (D. Mass. Nov. 28, 2011), *In re Simpson*, 711 S.E.2d 165 (N.C. Ct. App. 2011), *In re Kemp,* 440 B.R. 624 (Bankr. D.N.J. 2010); *In re Mims*, 438 B.R. 52, 56 (Bankr. S.D.N.Y. 2010); *In re Adams*, 693 S.E.2d 705 (N.C. Ct. App. 2010); and, *Restatement (Third) of Property, Mortgages* § 5.4(a), (*all explaining that*, the transfer of the note does not automatically transfer the mortgage with it, a unified ownership of the mortgage and the right to enforce the note must exist.)

formed to act as a REMIC trust pursuant to the U.S. Internal Revenue Code ("IRC"), on or about September 1, 2006, and is governed by New York law. It is the Issuing Entity for the certificates of investment.[5]

13.    Claim 9-1 states that Bank of America, N.A. ("BOA") is the servicer (agent acting on behalf) of the creditor, Defendant BONY.

14.    On May 5, 2014, Specialized Loan Servicing, LP ("SLS") filed a transfer notice with this Court for Claim 9-1, indicating that BONY transferred Claim 9-1 to SLS, presumably for the purpose of acting as BONY's new and current Servicer for The Trust.

## FACTS

### A.    Bankruptcy Procedural History

15.    On May 1, 2013, this case was commenced by the filing of a Chapter 11 petition with the Clerk of this Court by Debtor/Plaintiff.

16.    The Debtor/Plaintiff's Chapter 11 Petition listed a disputed debt to Bank of America, N.A. in the outstanding amount of $432,000.00. The debt was disputed at the time of filing the Chapter 11 Petition to the extent that the Debtor denied that BOA held an enforceable wholly secured claim against the residential property located at 1765 NE 58th Street, Fort Lauderdale, FL 33334 ("the Property"), which Debtor/Plaintiff has owned continuously since his purchase on August 17, 2006. (Clearly Debtor/Plaintiff did not know that BOA only enforced the terms of the promissory note and mortgage for the benefit of its principal, BONY.)

17.    On June 10, 2013, the 341(a) meeting of creditors was held. (D.E. 19).

18.    On July 7, 2013, BOA filed a Proof of Claim ("Claim 9-1") stating that BONY is the

---

[5]    *See,* the final filed Trust Prospectus at: *http://www.secinfo.com/dr66r.v2ut.htm#5hlt.*

Creditor of the secured interest on the Plaintiff's Property in the amount of $560,549.30.

19.   To support Claim 9-1, the following documents were attached:

a)   Form B 10A, titled Mortgage Proof of Claim Attachment, filled out by BOA;

b)   BOA's Escrow Account Review Statement.  (Claim 9-1, Part 2, Pgs. 1-4);

c)   A Copy of an unendorsed Promissory Note from Brett E. Howell to Bankers Mortgage Trust, Inc., the Lender, dated August 17, 2006, for the amount of $432,000.00 ("The Note") (Claim 9-1, Part 2, Pgs. 5-9);

d)   A Copy of a Mortgage securing The Note from Brett E. Howell to Bankers Mortgage Trust, Inc., the Lender, dated August 17, 2006, for the amount of $432,000.00.  (Claim 9-1, Part 2, Pgs. 10-35); and

e)   A copy of an Assignment of Mortgage, dated January 5, 2012 and recorded on January 24, 2012 with the Broward County Public Records in Book 46466, Page 796 from MERS, as nominee for Banker's Mortgage Trust, Inc., to BONY.  (Claim 9-1, Part 2, Pg. 36).

20.   On March 28, 2014, Specialized Loan Servicing, LLC. ("SLS") filed a Notice of Transfer of Claim for Other Than Security, for the amount of $560,549.30 stating that the Creditor, BONY, was the Transferor of Claim 9-1 and that as Transferor, had transferred Claim 9-1 as unsecured to SLS, the Transferee.  (D.E. 49).

21.   On July 23, 2013, Defendant, BONY filed an election for 11 U.S.C. 1111(b)(2) application to said Claim 9-1.  (D.E. 65).

**B.   Claim 9-1**

22.   The Plaintiff alleges that, as described more fully below, pursuant to Federal law, Florida law and New York law, the Defendant, BONY, is not the real party in interest as owner and holder of The Note and Mortgage.  Therefore, BONY (and its agents) does not have

constitutional or prudential standing, and, Claim 9-1 is void *ab initio* and should be

disallowed.[6]

23.     The record defects of Claim 9-1, which render Claim 9-1 void *ab initio,* and otherwise

unenforceable, include but are not limited to, the following:

a)      The Note is not endorsed (either payable to an identified person or to bearer, and dated) and there is no evidence of an effective and valid transfer of, negotiation of, or assignment of The Note to BONY, BONY owns and holds The Note;

b)      There is no document, such as an allonge or any other valid and effective document that evidences that BONY holds The Note, and, is in possession of it, or, if BOA, acting as BONY's agent, was in possession of The Note, with the rights to enforce it;

c)      There is no document attached to the Claim showing proof that BOA is the authorized servicing agent for Defendant, BONY.

d)      There is no document attached to the Notice of Transfer of Claim 9-1, showing proof that SLS is the authorized servicing agent for Defendant, BONY.

e)      There is no document showing a valid transfer, negotiation and assignment of The Note, from the original Lender, Bankers Mortgage Trust, Inc. to The Depositor or The Depositor to The Trustee, and the record lacks any evidence that The Note contains a properly endorsed chain of title;

f)      The MERS Assignment of Mortgage, fails as a valid and effective assignment of The Note because MERS has no financial interest in The Note;

g)      The MERS Assignment of Mortgage also fails as a valid and effective assignment of The Mortgage. It is signed in the name of MERS (by an employee of the servicer, BOA) as nominee for Bankers Mortgage Trust, Inc. directly to BONY, and thus,

---

[6]     *See* Footnotes 2 and 3; *see also, Ameriquest Mortg. Co. v. Nosek (In re Nosek)*, 609 F.3d 6 (1st Cir. 2010) (the inability to coherently prove ownership is both, endemic to the industry, and a common problem.); *see also, e.g., U.S. Bank Nat'l Ass'n v. Ibanez*, 458 Mass. 637 (2011) (holding US Bank did not sufficiently demonstrate it held title to a mortgage under Massachusetts law prior to foreclosure where US Bank alleged it received title pursuant to a trust agreement and did not provide the trust agreement but, instead, provided only an unsigned offer of mortgage-backed securities to potential investors that did not specifically identify the mortgage in question); *see also,* In *Doble, supra,* the Bankruptcy Court also found that it's holding was consistent with the findings of academics and reporters, who note this pattern of behavior is common in the mortgage industry, and that mortgage holders and servicers routinely file inaccurate claims, some of which may not be lawful. *(citing,* Katherine Porter, *Misbehavior and Mistake in Bankruptcy Mortgage Claims*, 87 Tex. L. Rev. 121, 123-24 (2008); and, Andrew J. Kazakes, *Developments in the Law: the Home Mortgage Crisis*, Loy. L.A. L. Rev. 1383, 1430 (2010).

violates Federal, Florida and New York law. Therefore, the Assignment of Mortgage is void *ab initio*.

24.     Further, Claim 9-1, filed by BOA as the alleged servicer for Defendant, BONY, also fails as a matter of law, because BOA had no more authority to enforce The Note than its principal, BONY. BOA, like BONY, lacks both constitutional or prudential standing and Claim 9-1 should be disallowed.[7]

25.     Plaintiff also alleges that since Defendant, BONY, is not the owner and holder of The Note, or the real party in interest, BONY could not have subsequently transferred Claim 9-1 from itself to SLS. Therefore, the Notice of Transfer of Claim for Other than Secured Interest by Transferor, BONY to Transferee, SLS is also void *ab initio*.

26.     Additionally, for the reasons stated above and herein, BONY's filing of its election for 11 U.S.C § 1111(b) application to Claim 9-1, in the full amount of its secured claim of $560,549.30, is also void *ab initio*, because Defendant, BONY, is not the real party in interest with standing to claim any interest in The Note, whether secured or unsecured. Thus, BONY's election for 11 U.S.C. § 1111(b) application should be denied, disallowed, and stricken.

27.     The Plaintiff alleges that Local Rule 3001-1, and Rule 3001(c) of the Federal Bankruptcy Rules, and, Paragraph 7 of the Official Proof of Claim form expressly require a party filing a Proof of Claim to attach "all supporting documents" to its claim. To the extent that the

---

[7]     Fed. R. Civ. P. 17 and 19 as well as Fed. R. Bankr. P. 7017 and 7019. Fla. R. Civ. P. 1.210(a), permits an action to be prosecuted in the name of someone other than, but solely acting for, the real party in interest; *Greer v. O'Dell*, 305 F.3d 1297, 1302-03 (11th Cir. Ala. 2002); *Juega v. Davidson*, 8 So. 3d 488, 489 (Fla. 3rd DCA 2009) (holding that an agent who has no personal stake in the outcome of litigation has standing to sue on behalf of a principal who authorizes the maintenance of the action); *see also, Mortgage Elec. Registration Sys. v. Azize*, 965 So. 2d 151, 153 (Fla. 2nd DCA 2007) (quoting *Kumar Corp. v. Nopal Lines, Ltd.,* 462 So. 2d 1178, 1183 (Fla. 3d DCA 1985) (holding that the owners of and investors in mortgages can authorize mortgage loan servicing companies, agents and other nominees to enforce the mortgages on their behalf.)

documents filed in support of Claim 9-1 do not comply with Federal, New York or Florida law, Claim 9-1 should be disallowed and The Note held unenforceable.[8]

28.    To the extent The Note could possibly be held enforceable, it should deemed unsecured for an amount other than the stated amount of $560,549.30 and allowed to the extent of other unsecured creditors under the Proposed Bankruptcy Plan.[9]

## C.    The Securitized Trust

29.    The Trust was created through a Pooling and Servicing Agreement (the "PSA"), dated September 1, 2006.  A copy of the PSA was filed under oath with the Securities and Exchange Commission ("SEC") as Exhibit 99.1 to form 8-K/A and is a public document that can be found online at http://www.secinfo.com/drjtj.v66j.d.htm#agzp per SEC File Number 333-131630-56, Accession Number 9051486-6364.  *See,* http://www.secinfo.com/dr66r.v2uz.htm.  However, the PSA, signed or otherwise, was not attached to Claim 9-1.

30.    Under the PSA, loans secured by a mortgage or deed of trust on residential real estate were supposedly pooled into a trust and converted to mortgage-backed securities that could be bought and sold by investors.  The Trust's *res* is comprised of those pooled loans valued at approximately $1,703,286,906.00.  The Trust has no individuals, as officers or directors,

---

[8]    *See, In re Hayes*, 393 B.R. 259 (Bankr. Mass. 2008); *In re Wells*, 407 B.R. 873 (Bankr. N.D. Ohio 2009).

[9]    Bankruptcy Code, 11 U.S.C. §506(a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. *See also, Restatement (Third) of Property, Mortgages* § 5.4(a), (comment a, "When the right of enforcement of the note and the mortgage are split, the note becomes, as a practical matter, unsecured.").

and, has no continuing duties, other than to hold assets and to issue the series of certificates of investment.[10]

31.     The PSA provides that The Trust was set up to accomplish a double purchase and sale of residential mortgage loans whereby a Seller sells certain number of particular mortgage loans to a Depositor, which in turn, sells the mortgage loans to the Trust. The conveyancing and acquisitions of the loans are designed to be "True Sales" to comply with Internal Revenue Code ("IRC") requirements, to qualify as a Real Estate Mortgage Investment Conduit, commonly referred to as a "REMIC", and to be bankruptcy remote from any claims of the originators of the said loans.[11]

32.     The PSA further sets out the intent of the parties. [12] Section 10.04 of The PSA states that the parties intend for the Loans to be negotiable instruments pursuant to New York UCC

---

[10]     *See* the filed PSA at: http://www.secinfo.com/drjtj.v66j.d.htm#agzp and the final, filed Prospectus at http://www.secinfo.com/dr66r.v2ut.htm#5hlt.

[11]     *See,* PSA SECTION 10.03. Governing Law.  THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK …

[12]     PSA.SECTION 10.04. Intention of Parties  (a) It is the express intent of the parties hereto that the conveyance of the (i) Mortgage Loans by the Sellers to the Depositor and (ii) Trust Fund by the Depositor to the Trustee each be, and be construed as, an absolute sale thereof to the Trustee. It is, further, not the intention of the parties that such conveyances be deemed a pledge thereof. However, in the event that, notwithstanding the intent of the parties, such assets are held to be the property of each Seller or the Depositor, as the case may be, or if for any other reason this Agreement is held or deemed to create a security interest in either such assets, then (i) this Agreement shall be deemed to be a security agreement (within the meaning of the Uniform Commercial Code of the State of New York) with respect to all such assets and security interests and (ii) the conveyances provided for in this Agreement shall be deemed to be an assignment and a grant pursuant to the terms of this Agreement (a) by each Seller to the Depositor or (b) by the Depositor to the Trustee, for the benefit of the Certificateholders and each Swap Counterparty, of a security interest in all of the assets that constitute the Trust Fund, whether now owned or hereafter acquired.

        (b) The Depositor hereby represents that: (i) This Agreement creates a valid and continuing security interest (as defined in the Uniform Commercial Code as enacted in the State of New York (the *"NY UCC"*)) in the Mortgage Notes in favor of the Trustee, which security interest is prior to all other liens, and is enforceable as such as against creditors of and purchasers from the Depositor. (ii) The Mortgage Notes constitutes *"instruments"* within the meaning of the NY UCC. (iii)  Immediately prior to the assignment of each Mortgage Loan to the Trustee, the Depositor owns and has good and marketable title to such Mortgage Loan free and clear of any lien, claim or encumbrance of any Person. (iv) The Depositor has received all consents and approvals required by the terms of the Mortgage Loans to the sale of the Mortgage Loans hereunder to the Trustee.  (v) All original executed copies of each Mortgage Note that are required to be delivered to the Trustee pursuant to Section 2.01 have been delivered to the Trustee.

law and must comply with IRC tax rules governing REMICs require that all mortgage loans, pooled to form The Trust's *res*, must be transferred to The Trust on the dates that the REMIC trust is formed on the *"start-up date"* of September 1, 2006, in order to maintain its tax exempt status. The Trust is prohibited from taking actions which affect the Trust's *res* and The Trust's REMIC tax-exempt status. A prohibited action places The Trust at significant risk for a potential adverse tax consequence of being highly taxed and also the potential risk of losing its REMIC tax-exempt status under the Internal Revenue Code.[13]

33.    Thus, The PSA sets forth how, when and by whom, the parties to it, acquire and convey the loans intended to be assets of The Trust. [14]

34.    The PSA also expressly creates, limits and governs, the powers of the parties obligated to The Trust. The parties obligated to The Trust include the Seller of the loans, the Depositor of the loans, the Trustee of The Trust, and the Master Servicer of the loans. Essentially,

---

[13]    The Trust Prospectus defines The Trust's Prohibited Transactions and Contributions Tax. The REMIC will be subject to a 100% tax on any net income derived from a *"prohibited transaction."* For this purpose, net income will be calculated without taking into account any losses from prohibited transactions or any deductions attributable to any prohibited transaction that resulted in a loss. In general, prohibited transactions include:

- subject to limited exceptions, the sale or other disposition of any qualified mortgage transferred to the REMIC;
- subject to a limited exception, the sale or other disposition of a cash flow investment;
- the receipt of any income from assets not permitted to be held by the REMIC pursuant to the Code; or
- the receipt of any fees or other compensation for services rendered by the REMIC.

It is anticipated that a REMIC will not engage in any prohibited transactions in which it would recognize a material amount of net income. In addition, subject to a number of exceptions, a tax is imposed at the rate of 100% on amounts contributed to a REMIC after the close of the three-month period beginning on the Startup Day.

[14]    Article II Conveyance of Mortgage Loans; Representations and Warranties; Section 2.02 Acceptance by Trustee of Mortgage Loans; Page 62 of 277.

The PSA requires these parties to comply with New York UCC law in each party's conveyance and/or acquisition of each loan in the pool forming The Trust *res.*

35.     The Sponsor and One of the Sellers, named in the PSA, is COUNTRYWIDE HOME LOANS, INC.

36.     The other Sellers, named in the PSA, are PARK GRANADA LLC *("Park Granada"),* a Delaware limited liability company, PARK MONACO INC. *("Park Monaco"),* a Delaware corporation, and PARK SIENNA LLC *("Park Sienna"),* a Delaware limited liability company.

37.     The Depositor of the loans, named in the PSA, is CWALT, Inc.

38.     The Trustee, of The Trust, named in the PSA, is BONY, the Defendant.

39.     The Master Servicer of the loans, named in the PSA is initially for conveyancing and documentation purposes, The Trustee, BONY, and then COUNTRYWIDE HOME LOANS SERVICING, LP for the actual administration of the Loans.

40.     The PSA states that the *"start-up date"* for The Trust was September 1, 2006.

41.     The PSA states that the *"cut-off date"* for The Trust was September 1, 2006.

42.     The PSA states that *"closing date"* for The Trust was September 29, 2006.

43.     The PSA requires that on September 1, 2006, each party is required to convey, transfer and deliver the original Note to the next party to the sale of the mortgage loans, and each delivered original mortgage note must be endorsed from The Seller, Countrywide Home Loans, Inc. to the next party, The Depositor and from The Depositor to The Trustee, for the benefit of the Trust, thus creating the chain of title. This requirement is specifically

spelled out in Section 2.01, Conveyance of Mortgage Loans, pages 58-62, and found

elsewhere in The PSA at pages 140, 164, 214 and 218 of 277.[15]

44.   The PSA strictly forbids The Trustee from acquiring any additional mortgage loans for The

Trust after September 29, 2006, the "*closing date*" of The Trust. Additionally, according

---

[15]     The relevant portions of the PSA found in Section 2.01 related to the Conveyance of Mortgage Loans:
Seller, concurrently with the execution and delivery of the PSA, sells, transfers, assigns, sets over and otherwise
conveys to the Depositor, without recourse, all its respective right, title and interest in and to the related Mortgage
Loans, including all interest and principal received or receivable by such Seller, on or with respect to the applicable
Mortgage Loans after the Cut-off Date.

     Seller shall deliver to the Depositor or, at the Depositor's direction, to the Trustee the Mortgage File for
each Mortgage Loan listed in the Mortgage Loan Schedule. And The Trust Fund is created.

     Immediately upon the conveyance of the Mortgage Loans to the Depositor, the Depositor sells, transfers,
assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders, without recourse, all
the right, title and interest of the Depositor in and to the Trust Fund.

     In connection with the transfer and assignment the Depositor has delivered or caused to be delivered to the
Trustee the following documents or instruments with respect to each Mortgage Loan so assigned:

          (i) (A) the original Mortgage Note endorsed by manual or facsimile signature in blank in the following
          form: *"Pay to the order of _____ without recourse,"* with all intervening endorsements
          showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note
          (each such endorsement being sufficient to transfer all right, title and interest of the equivalent
          and all riders thereto; and party so endorsing, as noteholder or assignee thereof, in and to that Mortgage
          Note); or (B) with respect to any Lost Mortgage Note, a lost note affidavit from Countrywide stating that
          the original Mortgage Note was lost or destroyed, together with a copy of such Mortgage Note;
          ii) in the case of each MERS Mortgage Loan, the original Mortgage or a copy of such mortgage, with
          recording information, noting the presence of the MIN of the Mortgage Loans and either language
          indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan;
          (iv) the original or copies of each assumption, modification, written assurance or substitution agreement,
          if any;

     The Depositor shall promptly deliver to the Trustee, the recorded Original Mortgage (or a copy), or
recorded interim assignments (or a copy), in no event shall any such delivery of the be made later than one year
following the Closing Date, or at the latest for Delay Delivery Loans, no later than 120 days following the Closing
Date; in the event the recording office does not return the recorded mortgage and assignments, the Depositor shall
deliver such documents to the Trustee as promptly as possible upon receipt thereof and, in any event, within 720 days
following the Closing Date.

     The Trustee shall, as promptly as practicable subsequent to such transfer and assignment of The Mortgage,
and in any event, within one-hundred twenty (120) days after such transfer and assignment, as the assignee thereof,
(A) affix the following language to each assignment of Mortgage: *"CWALT, Inc., Series 2006-OC8, The Bank of New
York, as trustee",* (B) cause such assignment to be in proper form for recording in the appropriate public office for
real property records and (C) cause to be delivered for recording in the appropriate public office for real property
records the assignments of the Mortgages to the Trustee.

     In addition, in connection with the assignment of any MERS Mortgage Loan, each Seller agrees that it will
cause, at the Trustee's expense, the MERS(R) System to indicate that the Mortgage Loans sold by such Seller to the

to the PSA, in connection with the negotiation, delivery and assignment of the Notes, the original or a copy of, the Mortgages, or, the original or a copy of, the interim Assignments must also be transferred, assigned and delivered by The Seller, Countrywide Home Loans, Inc., to The Depositor, and by The Depositor (or at The Depositor's request The Seller) to The Trust, on or promptly after, September 1, 2006. However, only in the event of any delay caused by the recordation of same, in the jurisdiction where the property lies, the

---

Depositor have been assigned by that Seller to the Trustee in accordance with this Agreement for the benefit of the Certificateholders.

Each Seller further agrees that it will not, and will not permit the Master Servicer to, and the Master Servicer agrees that it will not, alter the information referenced in this paragraph with respect to any Mortgage Loan sold by such Seller to the Depositor during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

Each Seller has entered into this Agreement in consideration for the purchase of the Mortgage Loans sold by such Seller to the Depositor and has agreed to take the actions specified herein. The Depositor, concurrently with the execution and delivery of this Agreement, hereby sells, transfers, assigns and otherwise conveys to the Trustee for the use and benefit of the Certificateholders, without recourse, all right title and interest in the portion of the Trust Fund not otherwise conveyed to the Trust Fund pursuant to Section 2.01.

Neither the Depositor nor the Trust will acquire or hold any Mortgage Loan that would violate the representations made by Countrywide set forth in clause (50) of Schedule III-A hereto. Clause 50 of Schedule III-A specifies the Prohibited Transactions.

Other than the security interest granted to the Trustee pursuant to this Agreement, the Depositor has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Mortgage Loans. The Depositor has not authorized the filing of and is not aware of any financing statements against the Depositor that include a description of collateral covering the Mortgage Loans other than any financing statement relating to the security interest granted to the Trustee hereunder or that has been terminated. The Depositor is not aware of any judgment or tax lien filings against the Depositor.

The Master Servicer shall take such action as is reasonably necessary to maintain the perfection and priority of the security interest of the Trustee in the Mortgage Loans; provided, however, that the obligation to deliver the Mortgage File to the Trustee pursuant to Section 2.01 shall be solely the Depositor's obligation and the Master Servicer shall not be responsible for the safekeeping of the Mortgage Files by the Trustee.

It is understood and agreed that the representations and warranties set forth above shall survive delivery of the Mortgage Files to the Trustee. Upon discovery by the Depositor or the Trustee of a breach of any of the foregoing representations and warranties set forth above, which breach materially and adversely affects the interest of the Certificateholders, the party discovering such breach shall give prompt written notice to the others and to each Rating Agency.

transfers and assignments can be properly documented and recorded no later than 1 year after The Trust's "*closing date*" September 29, 2006, on September 29, 2007.

45.     The PSA Section 2.01, Conveyance of Mortgage Loans, also provides that "In addition, in connection with the assignment of any MERS Mortgage Loan, each Seller agrees that it will cause, at the Trustee's expense, the MERS(R) System to indicate that the Mortgage Loans sold by such Seller to the Depositor have been assigned by that Seller to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files the information required by the MERS(R) System to identify the series of the Certificates issued in connection with such Mortgage Loans.

46.     Additionally, the PSA required at least three different certifications by BONY that all of the notes purchased by The Trust were present and that each note contained every endorsement that was required by the PSA, and documented within 120 days of the *closing date*, on January 27, 2007.

47.     Further, the PSA also constituted as a warranty by the Depositor, CWALT, Inc. that at the time it sold its assets to The Trust, it was the owner of all the assets.

48.     The PSA states that the parties to it may not engage in prohibited actions as defined by The PSA. The PSA is governed by the New York Estate Powers and Trusts Law, and Section 7-2.4 states that "if the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by the article and by any other provision of law, is void."

49.     For the reasons stated above, herein, and below, any claims that BONY owns and holds The Note appear to be legally insufficient, and unenforceable, because there is no evidence

of transfer, negotiation and/or assignment of The Note under New York and Florida UCC laws, and, it is not in compliance with the stricter Conveyancing Rule established under the PSA.[16]

50.    And, any claims by BONY that it has a secured interest in The Note by virtue of the Assignment of Mortgage appear to be legally insufficient and unenforceable because Claim 9-1 only attaches one Assignment of Mortgage from MERS as nominee for BMT, directly to BONY, and recorded on January 24, 2012, some 5 years, 3 months and 26 days (1943 days) after the Trust's *closing date*.[17]    And, Claim 9-1 has no properly recorded assignments from BMT or its nominee, MERS, to The Seller, Countrywide Home Loans, Inc., or by The Seller to The Depositor, or by The Depositor (or at The Depositor's request The Seller) to The Trust on or by the *cut-off date* September 1, 2006.    Therefore, the Assignment of Mortgage fails under New York and Florida UCC and it is not in compliance

---

[16]    Although generally, a party does not have standing to challenge a contract unless they are a third party intended beneficiary, several courts have held that a borrower may challenge the securitized trust's chain of ownership in the note and mortgage, by alleging the attempts to transfer the deed of trust to the securitized trust (which was formed under New York law) occurred after the trust's closing date, and are transfers that violate the terms of the trust instrument. Subsequently, any such transfers and/or assignments are void under New York trust law. New York Estates Powers and Trust Law, Section 7-2.4 states that every sale, conveyance or other act of the trustee in contravention of the trust documents is void. Therefore, any acceptance of the note and mortgage by the trustee, after the date the trust closed, would be void *ab initio*, and unenforceable. *In Re Saldivar*, Case No: 11-10689, Adversary No. 12-01010 (S.D.T.B., Brownsville Division June 5, 2013); *Wells Fargo Bank, N.A. v. Erobobo,* 2013 NY Slip Op. 50675(U) (Sup. Ct. Kings, Apr. 29, 2013), *see also, Glaski v. Bank of America, National Association*, F064556, Ca. App. 5th D. 2013), 39 Misc.3d 1220(A); *In re Veal*, 450 B.R. at 910-13 (B.A.P. 9th Cir. 2011); *In re Doble,* 2011 Bankr. LEXIS 1449 (Bankr. S.D. Cal. Apr. 14, 2011) (citing, *In re Wilhelm*, 407 B.R. 392, 400 (Bankr. D. Idaho 2009)); *In re Kemp,* 440 B.R. 624 (Bankr. D. N.J. 2010); *see also, Nosek v. Ameriquest Mortgage Company (In re Nosek*), 286 Br. 374 (Bankr. D. Mass. 2008); *In re Hayes*, 393 B.R. 259 (Bankr. D. Mass. 2008); *In re Vargas*, 396 B.R. 511 (Bankr. C.D. Cal. 2008); *In re Hwang*, 396 B.R. 757 (Bankr. C.D. Cal. 2008*); Deutsche Bank Nat'l Trust Co. v. Steele*, 2008 WL 111227 (S.D. Ohio) January 8, 2008, *In re Schwartz*, 366 B.R.265 (Bankr. D. Mass. 2007); *In re Foreclosure Cases*, 521 F. Supp. 2d (S.D. Ohio 2007); *and, see, O'Neill v. De Laney*, 92 Ill.App.3d 292, 297 (1980) (holding that a third party can challenge validity of a contract where they established a "significant and direct interest" in its validity).

[17]    "Land cannot be transferred except by writing and necessarily is in the present tense. The writing itself is the transfer when executed (emphasis added)" *Juarez v Select Portfolio*, No. 11-2431 (February 12, 2013, 1st Cir.), and, *Belcher v Elliot*, 312 F.2d 245 (6th Cir. 1962); *see also, Vidal v. Liquidation Properties,* 104 So. 3d 1274 (Fla. 4th DCA 2013) (holding that allowing assignments to be retroactively effective would be inimical to the requirements of pre-suit ownership for standing in foreclosure cases*).*

with the Conveyancing Rule established under the PSA. [18]

51. As stated above, because BONY cannot accept a Loan, for the benefit of The Trust's Certificateholders, that is not properly conveyed, transferred or assigned, pursuant to New York and Florida UCC law, and in compliance with the Conveyancing Rules established under The PSA, Claim 9-1 is void, *ab initio.*

**D.   THE NOTE**

52. The Note, dated August 17, 2006, is a negotiable instrument, payable as a promise, from Brett E. Howell to Bankers Mortgage Trust, Inc., the original Lender, the principal amount of \$432,000.00, together with interest, with monthly payments beginning October 1, 2006 and ending September 1, 2036.

53. The Note provided that: "... anyone who takes this Note by transfer and is entitled to receive payments under this Note is called the 'Note Holder.'"

54. However, to have a valid and effective claim of interest in The Note, the Defendant, BONY (or its agent) must be the Holder of The Note, with the rights to enforce as its owner. *See,* FN. 2.

55. To be the note holder, one must take delivery and have possession of the original note, and it must be endorsed, whether payable to order or to bearer, in blank. However, to have the right to enforce the note as its owner, requires other evidence of a valid assignment, proof of purchase of the debt, or evidence of an effective transfer. *See, e.g.,* both, Florida's Uniform Commercial Code, Fla. Stat. § 673 *et seq.*, pursuant to its PSA, New York's Uniform Consolidated Laws, Uniform Commercial Code, Articles 3-201, 3-202, 3-301-307, also apply.

---

18      *See,* Footnotes 3, 4, 16 and 17.

56.    Thus, for BONY to be the owner and holder of have a valid and enforceable interest in The

Note as an asset of The Trust, pursuant to New York UCC law, Florida UCC law, and The

PSA also governed by New York law, the original Note must have been negotiated and

transferred, with endorsements, and/or assigned and documented, by the original lender,

BMT, to the next party, on or after August 17, 2006, and that in order for The Note to be

an asset of The Trust, the original Note must be negotiated and transferred, and assigned

and documented by The Seller, Countrywide Home Loans, Inc. to The Depositor, and The

Depositor to the Trustee for The Trust on September 1, 2006 (the "*start-up date*" and "*cut-

off date*").

57.    The copy of The Note attached to Claim 9-1 does not evidence that it is a true and correct

copy of the Original Note. The copy of The Note does not contain any endorsements, either

statutorily required or agreed upon, by BMT to, and by, any subsequent holder and owner

to BONY.    Furthermore, Claim 9-1 does not include any evidence of transfer and

assignment of The Note, duly noticed and recorded by BONY or any of BONY's

predecessors in interest after BMT.

58.    Claim 9-1 also does not have an allonge affixed to The Note, indicating any valid and

effective negotiation and transfer of it, attached or affixed to it. Likewise, Claim 9-1 does

not include any Affidavits of Lost Note that would be required if The Note was lost,

destroyed or stolen.

59.    Further, upon information and belief, Plaintiff alleges that the original lender, BMT sold,

negotiated and transferred the Plaintiffs' Note. The Plaintiff alleges that BMT has, for

valuable consideration, transferred all of its right, title and interest in/an/ to Plaintiff's Note

and Mortgage, and that BMT no longer has any or claims any financial interest in Plaintiff's Note and Mortgage.

60.  For the reasons stated in Paragraphs 42, 43 and 52-59 above, upon information and belief, Plaintiff asserts that Defendant BONY is not the holder and owner of The Note entitled to enforce it, whether secured or unsecured, and equally, neither Defendant BONY, or its servicing agents, BOA or SLS, are non-holders in possession of The Note with the rights of a holder, entitled to enforce it as owner, whether secured or unsecured.

61.  Therefore, Plaintiff asserts that Defendant BONY lacks standing to instruct BOA to file a Proof of Claim seeking to enforce The Note against Plaintiff.

62.  Plaintiff also alleges that because Defendant, BONY, lacks any valid and enforceable interest in The Note and Mortgage, that BOA also does not have standing to pursue Claim 9-1, solely on behalf of and for the benefit of Defendant BONY, because it can only enforce the rights of its principal.

63.  Additionally, Plaintiff asserts that because Defendant, BONY, lacks any valid and enforceable interest in The Note and Mortgage, it therefore cannot transfer Claim 9-1 to SLS, and the Notice of Transfer of the Claim for Other Than Secured Interest filed on March 14, 2014 by SLS, is void and unenforceable and should be stricken from the underlying Bankruptcy case.

64.  Moreover, Plaintiff asserts that because Defendant BONY lacks standing to enforce The Note, filing its Notice of Election for Application of 28 U.S.C. § 1111(b) to Claim 9-1 is equally a fraudulent misrepresentation to This Honorable Court and should be disallowed and stricken from the underlying Bankruptcy case.

## E. THE MORTGAGE AND ASSIGNMENT OF MORTGAGE

65. Contemporaneously with the execution of The Note, Plaintiff/Debtor gave a security interest ("Mortgage") in The Property to Mortgage Electronic Registration Systems, Inc. acting solely as the beneficial nominee for, Lender, Bankers Mortgage Trust, Inc.

66. Said Mortgage, dated August 17, 2006, securing the $432,000.00 loan was recorded with the Broward County Public Records on September 1, 2006 in Book 42690, Page 15.

67. MERS, the beneficiary of The Mortgage, is a stranger to the PSA because the Agreement is between Countrywide Home Loans, Inc. as Seller, CWALT, Inc. as Depositor and Bank of New York Mellon as Trustee.

68. Upon information and belief, the Lender under The Mortgage, Bankers Mortgage Trust, Inc. was not a MERS member.

69. Subsequently, on January 24, 2012, an Assignment of Mortgage was recorded against the Plaintiff on January 24, 2012 in the Broward County Public Records, Book No.: 46466, Page No.: 796. The Assignment of Mortgage purports to assign all of the beneficial interest that MERS had (as nominee) in The Mortgage directly to CWALT, Inc. Alternative Loan Trust 2006-OC8, Mortgage Pass-Through Certificate, Series 2006-OC8.

70. The Assignment of Mortgage states that "For Value Received, MERS" as Assignor grants, sells, assigns, transfers and conveys to the Assignee, BONY as Trustee:

> "all of Assignors' rights, title and interest in and to that certain Mortgage dated August 17, 2006 from Brett Howell to Assignor in the amount of $432,000, recorded in Official Records Book 42690 Page 1537 on the public records of Broward County, Florida, registered with MERS under MIN 1002076-0000000416-4. The assignment is made without recourse to Assignor and without representation or warranty by Assignor, express or implied."

71.    The Assignment of Mortgage attempts to document and record the assignment of The Note,

       stating that:

              "This loan was held by the Assignee prior to the Assignee filing a foreclosure action
              on April 13, 2010.  The date of execution of this Assignment of Mortgage by the
              Assignor is not reflective of the date the loan was transferred to the Assignee.  The
              execution of this document is a ministerial act completed to comply with state law
              as to how the transfer is to be documented and is not reflective of the transfer date
              itself."

72.    However, The Assignment of Mortgage doesn't give any specific date that the loan was

       transferred to the Assignee, BONY and in fact can only be effective as of the date of

       execution.[19]  Thus, it does not validly and effectively document an Assignment of The

       Note.

73.    Further, the Assignment of Mortgage states that it was executed on January 5, 2012 by

       Aida Duenas, as Assistant Secretary of MERS, acting solely as a nominee for Lender,

       BMT.

74.    Upon information and belief, at the time of executing The Assignment of Mortgage, Aida

       Duenas, was not an employee of BMT, MERS or BONY, and was only an employee of

       BAC Home Loan Servicing, LP, and BAC Home Loans, Inc., formerly known as

       Countrywide Home Loans Services, LP, which allegedly serviced The Note and Mortgage

       for BONY.

75.    Upon information and belief, at the time of executing The Assignment of Mortgage, Aida

       Duenas, held signing authority approval for MERS, given to her by one of her employers,

       BAC Home Loans, Inc.

---

[19]    *See*, Footnote 12.

76.    Upon information and belief, at the time of executing The Assignment of Mortgage, BAC
       Home Loans Servicing, LP was not a MERS member.

77.    The recorded Assignment of Mortgage, executed on January 5, 2012 and recorded some 5
       years, 3 months and 26 days (1943 days) after the Trust's *closing date* on January 24, 2012,
       only reflects an assignment of the mortgage from MERS as nominee for BMT, directly to
       BONY does not validly and effectively document, record or notice or assign legal title of
       The Mortgage to BONY, nor is it a proper assignment of legal title of The Mortgage from
       The Depositor to BONY, and lastly, the Assignment of Mortgage is signed by an employee
       of a prior servicer, BAC Home Loans Servicing, LP, and not from BMT or MERS, and
       under New York and Florida UCC laws or The PSA's Conveyancing Rule, it is therefore
       void and unenforceable against the Plaintiff and should be stricken.

78.    Additionally, it appears on the face of the documents attached to Claim 9-1, that 1)
       Defendant BONY does not have any rights or interest in The Note, 2) that The Note was
       bifurcated from The Mortgage and 3) that the Assignment of Mortgage does not effectively
       transfer, negotiate and/or assign any rights, title or interest in The Mortgage or The Note
       to Defendant BONY, Claim 9-1 is fatally defective, void *ab initio* and should be disallowed
       and stricken.

### FIRST CLAIM FOR RELIEF
### (OBJECTION TO PROOF OF CLAIM 9-1)

79.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above
       as if fully set forth herein.

80.    The Debtor objects to the Proof of Claim filed as Claim 9-1, for several reasons, pursuant
       Fed. R. Bankr. P. 3001(c) and 11 U.S.C. § 502:

       a.    That BOA's claim lacks sufficient documentation to establish it is a secured

creditor. No evidence is provided to support that BOA has standing to file a proof of claim in this case. Instead, Debtor asserts BOA is without standing to bring a claim in this bankruptcy proceeding. In fact, the documentation BOA attached to POC 9-1 indicates that the promissory note dated August 17, 2006 is owed to Mortgage Bankers Trust, Inc. ("MBT") rather than the Claimant, BOA. Indeed, POC 9-1, failed to attach any documents evidencing a transfer or negotiation of the Promissory Note from MBT to BOA or BONY. Thus, there is insufficient evidence presented to establish that the claim could be traced from MBT to BOA or BONY.

b.     Further, BOA's claim lacks sufficient documentation to establish it is a secured creditor by perfection of the Mortgage. The Mortgage attached to POC 9-1 is between the Debtor and MBT, dated August 17, 2006. Also attached to POC 9-1 is a purported Assignment of Mortgage. However, said Assignment indicates that only the mortgage was allegedly assigned by an agent of Mortgage Electronic Registration Systems, Inc. ('MERS") acting solely as nominee for MBT to BONY. Said assignment has an acknowledgment notarized on January 5, 2012 and recorded on January 24, 2012. Thus, POC 9-1 failed to attach proper documentation evidencing the proper assignment of mortgage from MBT or MERS to BOA or BONY within the dates allowed by the actual Trust that BONY was trustee for.

c.     The language quoted above and contained in the Assignment attached to POC 9-1 calls in to question the veracity of the document itself and certainly does not indicate that BOA or BONY was properly assigned the Mortgage. Additionally, said language quoted above and contained in the Assignment attached to POC 9-1 does not indicate in any way that the Promissory Note was transferred or negotiated timely and properly to BOA or BONY.

d.     Specifically, the document governing MERS, BOA, and BONY's actions, if allowed, regarding this Promissory Note and Mortgage are contained in the Pooling and Servicing Agreement on file and of public record with The Securities and Exchange Commission, dated September 1, 2006, with a Cut-off Date of September 1, 2006. The Assignment attached to POC 9-1 shows no evidence that the mortgage was assigned to BONY by September 1, 2006. The Promissory Note, which must be transferred to BONY by negotiation, shows no evidence of said negotiation or proper possession evidencing it is has holder in due course status to enforce said Promissory Note.

e.     Moreover, BOA's POC 9-1 includes an identification of amounts allegedly owed which are unclear or may be incorrect. BOA failed to attach a proper loan history to its claim. In the absence of a loan history, the Debtor is unable to address the amounts allegedly owed according to BOA's claim.

f.     Plaintiff did not and does not owe any money to BONY.

g.     BONY's claim, to the extent it may have one, is unsecured.

h.    BONY has no standing to assert creditor status of Claim 9-1.

i.    SLS has no standing to continue Claim 9-1, as the servicer to BONY, for The Trust.

j.    Bank of America, N.A. has no standing to assert Claim 9-1 on behalf of BONY.

## SECOND CLAIM FOR RELIEF
### FOR DECLARATORY AND INJUNCTIVE RELIEF THAT CLAIM 9-1 AS INVALID, UNENFORCEABLE AND DISALLOWED

81.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as if fully set forth herein.

82.    By reason of Defendants conduct alleged above, Plaintiff alleges that he is entitled to an equitable decree enjoining The Bank of New York Mellon f/k/a Bank of New York, as Trustee for the Certificateholders of CWALT, Inc. Alternative Loan Trust 2006-OC8, Mortgage Pass-Through Certificate, Series 2006-OC8, and its servicing agent, now Select Loan Servicing, LP, from continuing to file false claims or from continuing to assert a claim as to an enforceable secured or unsecured claim against property of the estate in bankruptcy.

## THIRD CLAIM FOR RELIEF
### DETERMINATION THAT THE NOTE WAS BIFURCATED FROM THE MORTGAGE, AND THAT THE CLAIM IS UNSECURED

83.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as if fully set forth herein.

84.    Plaintiff alleges that he holds an interest in the Property free and clear of any interest of BONY in that the lien evidenced by the BONY Assignment of Mortgage has no value since it is wholly unsecured, that BONY's claim is not allowable as a secured claim, and that

accordingly, the Assignment of Mortgage is ineffective to pass legal title to BONY, and is null and void.

85. At no time relevant hereto did BONY hold and own both the Note and Mortgage. Therefore, the loan could not have been serviced by BOA or its successor SLS. BOA did not have standing to file the proof of claim on behalf of BONY, and BONY did not have standing to transfer the claim to SLS for enforcement on its behalf.

86. Plaintiff alleges that BONY as Trustee does not hold a perfected secured claim upon Debtors' residential property and the lien should be disallowed as secured.

## FOURTH CLAIM FOR RELIEF
### DETERMINATION THAT THE CLAIM IS UNSECURED AND THAT THE EXTENT BE LIMITED

87. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as if fully set forth herein.

88. Plaintiff alleges that a claim of Defendant BONY, or its agents, if any, and if allowed, should be deemed unsecured and the Assignment of Mortgage void and/or satisfied.

89. Plaintiff alleges the lien is unsecured and therefore falls in to the same category as all other unsecured debt, with no priority over other debts and should be confirmed under the plan and not allow BONY's election for application of Section 1111(b) of Title 11 of the Bankruptcy Code, for the total amount of the stated secured claim in Claim 9-1 for $560,549.30

## FIFTH CLAIM FOR RELIEF
### SANCTIONS FOR VIOLATION OF THE AUTOMATIC STAY

90. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as if fully set forth herein.

91.   BONY through its servicing Agents, BOA and Currently SLS has continued to attempt to collect the Claimed Debt in violation of the Automatic Stay.  Thus, the Claim is subject to sanctions because BONY and its servicing agents, BOA and Specialized Loan Servicing, LP have violated the automatic stay in this case numerous times by continuing to service the loan despite never receiving relief from the automatic stay.

92.   The Plaintiff seeks actual and punitive damages against the Defendant, BONY, for violating the automatic stay in this case by causing its agent to the file a void proof of claim, Claim 9-1, on its behalf, and, for instructing its servicers, BOA and SLS, to attempt to collect payments on the debt from him, without owning the Note, pursuant to Section 362(k)(1) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, to the Bankruptcy Code, after it received Notice of the Plaintiff's Ch. 11 Bankruptcy Petition, on May 1, 2013.

## PRAYER

WHEREFORE, the Debtor prays this Court enter an Order granting the following relief:

A.  Determining The Note is void and unenforceable;

B.  Determining The Assignment of Mortgage is void and unenforceable;

C.  Determining that Claim 9-1 is void *ab initio*;

D.  Disallowing Claim 9-1 and striking the proof of claim filed by BOA for BONY;

E.  If the claim is allowed, determining that the debt is unsecured;

F.  If the claim is allowed, determine the amount of the debt is reduced as appropriate;

G.  Determine actual and exemplary Damages be entered for Plaintiff, against BONY;

H.  Requiring BONY to pay reasonable legal fees and expenses to Dawn M. Rapoport, Esq. as special counsel for the Plaintiff, for the filing of an improper claim in this case;

I.  That the Plaintiff have such other and further relief as the Court may deem just and

proper.

Respectfully submitted this 4th of September, 2014.

Dawn M. Rapoport, P.A. d/b/a
Rapoport Law Group, special counsel for Plaintiff
1314 East Las Olas Blvd. # 121
Fort Lauderdale, FL 33301
Telephone: 754-333-1105
Facsimile: 954-337-3759
Primary Email: dawn@rapoportlawgroup.com

By:
Dawn M. Rapoport
Fla. Bar No.: 13176